## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

**ETTER WILKES**                                                                                          **PLAINTIFF**

**v.**                                            **Case No. 3:14-cv-00224-KGB**

**NUCOR-YAMATO STEEL COMPANY**                                                **DEFENDANT**

## <u>ORDER</u>

Plaintiff Etter Wilkes brings this action *pro se* against defendant Nucor-Yamato Steel Company ("Nucor") and alleges claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (Dkt. No. 2). Before the Court is Nucor's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 7). Ms. Wilkes has responded (Dkt. No. 13), and Nucor has replied (Dkt. No. 15).

Nucor styled its reply as including, in the alternative, a motion for summary judgment. It is not clear to the Court if Nucor intends to move for summary judgment in the alternative or if Nucor styled its reply this way because of the way in which Ms. Wilkes styled her response. To the extent Nucor intends to move in the alterative for summary judgment, its filing does not comply with Federal Rule of Civil Procedure Rule 56 and Local Rule 56.1. For this reason, and because the Court determines that it need not convert Nucor's Rule 12(b)(6) motion to one for summary judgment to resolve the matters before it, the Court will not consider Nucor's alternative motion for summary judgment. For the reasons that follow, the Court grants in part and denies in part Nucor's motion to dismiss (Dkt. No. 7).

## I.    Factual Background

According to her complaint, Nucor employed Ms. Wilkes at its plant in Blytheville, Arkansas, from December 2, 1997, until her termination on March 5, 2014.  From September 2000 until the time of her termination, Ms. Wilkes worked as an Inspector in the Roll Mill Finishing Department.  She alleges that she was the only African-American female on her work crew and the only female in her department.

### A.    Ms. Wilkes's Claims

Ms. Wilkes alleges four groups of claims under the following headings:    (1) "Discrimination on the Basis of Race and Gender − Equal Access"; (2) "Discrimination Based on Race, Sex, and Disability − Long Term Disability"; (3) "Discrimination on the Basis of Race, Sex, and Disability − Failure to Make a Reasonable Accommodation"; and (4) "Discrimination on the Basis of Race, Gender, and Disability − Wrongful Termination."  (Dkt. No. 2).

First, to support her race and gender "equal access" claims, Ms. Wilkes alleges that Nucor failed to provide a women's restroom for her use in her work area.  Specifically, she alleges that she had access to only two women's restrooms, both of which were a considerable distance from her work area; that Nucor locked her out of one of these restrooms for a week; that Nucor failed to fulfill its representation that it would build a women's restroom in Ms. Wilkes's work area; and that males in her work area had access to four restrooms in locations that did not require them to walk outside to gain access, as she had to do (Dkt. No. 2, ¶¶ 13-17).  She further describes one occasion on November 5, 2013, in which her alleged disability, discussed below, caused her difficulty in returning to her work area from the restroom in the Roll Mill's main office (*Id.*, ¶ 16).

Ms. Wilkes's bases her second group of claims on allegations that Nucor did not properly assist her with obtaining long-term disability insurance benefits (Dkt. No. 2, ¶¶ 19-29).   She alleges that, after becoming ill at the end of November 2012 and exhausting her vacation and short-term disability benefits, Nucor provided her with the paperwork for long-term disability benefits "approximately two weeks off schedule" and provided inaccurate information to Nucor's third-party disability insurance carrier, Liberty Mutual, regarding her employment, which resulted in the denial of her long-term disability benefits.   She further alleges that Nucor threatened to fire her when she had to request the paperwork a second time.   Ms. Wilkes claims that she is the only African-American female who has been denied benefits, while male co-workers who have applied for long-term disability benefits have been approved without issue.   In addition, Ms. Wilkes alleges that Nucor avoided and failed to respond meaningfully to her requests for Nucor's assistance in 2013 to appeal Liberty Mutual's decision to deny her long-term disability benefits.

For her third group of claims, the failure-to-accommodate claims, Ms. Wilkes alleges that, after she took off work in November 2012, she was diagnosed with morbid obesity, lumbar degenerative disc disease, and knee degenerative joint disease, all of which she asserts render her disabled within the meaning of the ADA.   She contends that she informed Nucor in October 2013 of her need for an accommodation in that her doctor intended to release her to work with the restriction that she would need frequent rest breaks.   Ms. Wilkes alleges that Nucor would not allow her to return to work with any restrictions and that, as a result, her doctor released her to return to work on October 27, 2013, without any restrictions.   She claims that she learned upon returning to work that Nucor had already hired a white male without a disability to replace her.   Although she alleges she was replaced, Ms. Wilkes states that she returned to work in

October 2013 and worked three-and-a-half days over two pay periods.  She claims that, because of the distance required for her to walk to the restroom, her doctor placed her back on restrictions, and she was forced to take off work again.  She asserts that Nucor made no efforts to provide any reasonable accommodation and made negative comments to the effect that Ms. Wilkes needed to find another doctor (Dkt. No. 2, ¶¶ 30-40).

Lastly, Ms. Wilkes alleges race, gender, and disability discrimination claims for wrongful termination based on her March 5, 2014, termination.  She claims that she was terminated based on a policy to terminate employees who are off work for 15 consecutive months, despite the fact that she returned to work for three-and-one-half days in October 2013.  She alleges that she was told on at least two occasions that she needed to make up her mind whether she would return to work and that she was going to be fired.  She further alleges that Nucor's management often made inappropriate comments to her that were discriminatory and treated her differently on the basis of her race, gender, and disability (Dkt. No. 2, ¶¶ 41-47).

### B.  Equal Employment Opportunity Commission Filings

Ms. Wilkes alleges in her complaint that she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 18, 2014.  She did not attach to her complaint any EEOC documents.  However, Nucor has presented as an exhibit to its motion Ms. Wilkes's Form 5 charge signed February 25, 2014, and stamped as received by the EEOC on the same date (Dkt. No. 8-1).  In her EEOC charge, Ms. Wilkes checked the boxes for "Sex" and "Disability" discrimination; she did not check the box for "Race."  (*Id.*).  In the section describing particulars, she stated as follows:

> I was hired December 2, 1997, and my current position is Inspector.  I was told a female would never be placed in my position.  There has not been a ladies' room in my building for the last 14 years.  When I first started using the ladies' room in the management building a deadbolt lock was placed on it and I was denied a key

to gain access. I still have to go outside to use the restroom. I developed a disability and began taking off in November 2012. I was denied short-term disability twice. My personnel office has not assisted me with accurate, professional help in dealing with claims/paperwork. I have been attending physical therapy and paying a third of my medical expenses out of pocket.

I was told males did not want to loose [sic] one of their four restrooms. I was told the cost to build one was too high. I was told that my doctor jeopardized my health. I also was told that I need to make up my mind because I was going to be fired.

I believe I was not provided/given restroom access because of my sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe I am not being assisted with needed information to submit documents because of my disability in violation of the Americans with Disabilities Act of 1990, as amended.

(Dkt. No. 8-1).

According to Nucor, Ms. Wilkes never amended her EEOC charge after her termination, and Ms. Wilkes does not allege or argue otherwise. According to Ms. Wilkes's complaint, the EEOC issued a notice of right to sue on June 27, 2014; neither party has presented that document to the Court.

Ms. Wilkes attaches to her response to Nucor's motion to dismiss an EEOC intake questionnaire she signed on February 18, 2014, and which the EEOC stamped as received on the same date (Dkt. No. 13-1). In her intake questionnaire, Ms. Wilkes checked the boxes for race, sex, and disability discrimination; specifically attributes some alleged discrimination to her race; and mentions requesting an accommodation.

The intake questionnaire states under the signature line, in smaller print, that its principal purpose "is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1628.8(c), this questionnaire may serve as a charge if it meets the elements of a charge." (Dkt. No. 13-1, at 4).

Just above the signature line, the questionnaire provides the following instructions for checking one of two alternative boxes:

> **Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.** If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's law. **If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or if you have concerns about the EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.**

(Dkt. No. 13-1, at 4).

"Box 1" provides:

> I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. **I also understand that I could lose my rights if I do not file a charge in time.**

(*Id.*).

"Box 2" provides:

> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that **the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.** I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

(*Id.*).

Ms. Wilkes checked "Box 1," indicating that she wanted to speak to an EEOC employee before deciding whether to file a charge. She did not check "Box 2," the box indicating intent to file a charge. Unlike her Form 5 charge, Ms. Wilkes's intake questionnaire is signed but not under penalty of perjury.

## II.      Rule 12(b)(6) Legal Standard

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). Additionally, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 540 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

*Pro se* litigants are held to a lesser pleading standard than other parties in that *pro se* complaints are to be liberally construed. *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *pro se* complaints "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *see Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (cited with approval in *Stone* and stating with regard to a *pro se* plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded.").

When ruling on a Rule 12(b)(6) motion to dismiss, a district court generally may not consider materials outside the pleadings. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The district court "may, however,

7

consider some public records, materials that do not contradict the complaint or materials that are 'necessarily embraced by the pleadings.'" *Noble Sys. Corp.*, 543 F.3d at 978 (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).  Accordingly, this Court may consider the charges of discrimination and documents filed with the EEOC in ruling on Nucor's Rule 12(b)(6) motion to dismiss.  *See Faisbisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (determining that "an EEOC charge is part of the public record, and thus the motion to dismiss was not converted to one for summary judgment by the attachment of a copy of the EEOC charge.").

### III.   Discussion

Ms. Wilkes alleges claims under Title VII and the ADA.  Title VII prohibits, among other things, employment discrimination against an individual "because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).  The ADA "forbids discrimination against persons with disabilities in three major areas of public life:  employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III."  *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).  Ms. Wilkes does not specify under which Title of the ADA she purports to bring her disability claims.  Because she alleges employment discrimination, the Court will construe her ADA claims as being brought under Title I of the ADA.  *Id.*; *see* 42 U.S.C. § 12112.  Title I of the ADA incorporates by reference the powers, remedies, and procedures set forth in Title VII, including Title VII's administrative exhaustion requirements. 42 U.S.C. § 2000e-5; *id.* § 12117(a) (incorporating same); *see McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740 n.3 (8th Cir. 1996).

In moving to dismiss, Nucor argues that: (1) Ms. Wilkes failed to exhaust her administrative remedies as to her race discrimination, reasonable accommodation, and wrongful termination claims; (2) Ms. Wilkes cannot establish an adverse employment action with regard to her Title VII sex discrimination claim and ADA discrimination claim regarding her disability insurance application; and (3) the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, preempts Ms. Wilkes's ADA claim regarding her disability insurance application.  The Court will discuss each in turn.

### A.      Exhaustion Of Administrative Remedies

To assert her Title VII and ADA claims, Ms. Wilkes must have first exhausted her administrative remedies by filing a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred.  42 U.S.C § 2000e-5(b), (e)(1); *id.* § § 12117(a).  The EEOC charge "limits the scope of the subsequent civil action because 'the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'"  *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006) (quoting *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 887 (8th Cir. 1998)).  "Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge."  *Id.*; *see Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222-23 (8th Cir. 1994) (same, and describing exhaustion of administrative remedies as "central to Title VII's statutory scheme").  Title VII's requirement of filing a timely charge of discrimination is subject to equitable doctrines such as tolling or estoppel, although such doctrines are to be applied sparingly.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 152 (1984) (per curiam)

("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").

Nucor argues that Ms. Wilkes's race discrimination claims, failure-to-accommodate claim, and wrongful termination claims are not within the scope of her administrative charge. Nucor submitted her administrative charge with its filings.  In response, Ms. Wilkes relies on her intake questionnaire to contend that she asserted such claims at the charge stage, but Nucor contends that her intake questionnaire does not qualify as an administrative charge.  Before considering the scope of Ms. Wilkes's administrative charge, the Court must address whether it can consider the intake questionnaire as part of her administrative charge.

### 1.     The Intake Questionnaire

Nucor objects to the Court's considering Ms. Wilkes's intake questionnaire because it is not verified as required by Title VII, Ms. Wilkes checked the box indicating that she wanted to speak with the EEOC before deciding whether to file a charge, and her verified Form 5 charge does not include the race and accommodation claims raised in the unverified intake questionnaire.

Title VII provides that charges "shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires."  42 U.S.C. § 2000e-5(b).  Under the EEOC's regulations, a charge is sufficient when it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of," and a charge "may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein."  29 C.F.R. § 1601.12(b).

The Eighth Circuit Court of Appeals has consistently held that intake questionnaires which are neither signed under oath nor verified do not satisfy Title VII's statutory requirement

10

for administrative charges. *Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 796 (8th Cir. 1998).  However, the Supreme Court's decision in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), appears to have overruled *Shempert* and related cases to the extent that the Supreme Court validated the EEOC regulation, 29 C.F.R. § 1601.12(b), permitting a charge to be amended to, among other things, cure technical defects such as the failure to verify the charge.  *See Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 801 (8th Cir. 2011) (construing the holding of *Edelman*); *Sifferman v. Bd. of Regents, Se. Mo. State Univ.*, 250 F. Supp. 2d 1139, 1143 (E.D. Mo. 2003) (recognizing *Edelman*'s apparent overruling of *Shempert* and related cases).  Based on *Edelman*, this Court recently considered an intake questionnaire as a charge under Title VII for purposes of resolving a Rule 12(b)(6) motion where the defendants challenged the questionnaire for lack of a verification, date, or signature.  *See Bass v. Univ. of Ark. at Pine Bluff*, No. 5:12-CV-00286-KGB, 2014 WL 4630459, at *11 (E.D. Ark. Sept. 16, 2014).  Accordingly, the lack of verification alone is not fatal to considering the intake questionnaire as part of a charge.

Ms. Wilkes does not focus on the verification issue but instead argues that the Court should consider her intake questionnaire as a charge based *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), in which the Supreme Court considered whether an intake questionnaire could satisfy the similar charge-filing requirement under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 262(d), for purposes of determining the timeliness of suit.  After noting the need to define a charge in a way that allows the EEOC to separate information requests from enforcement requests, the *Holowecki* Court held that, in addition to the information required by the EEOC regulations, "if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  552

U.S. at 400-02.  In other words, "the filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes . . . ."  *Id.* at 402.  "[U]nder this permissive standard a wide range of documents might be classified as charges. . . . But this result is consistent with the design and purpose of the ADEA," which, "like Title VII, sets up a 'remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.'" *Id.* at 402 (quoting *E.E.O.C. v. Commercial Office Prods. Co.*, 486 U.S. 107, 124 (1988)).

Nucor argues in its reply that *Holowecki* does not control because that case was decided with regard to the ADEA, not Title VII.  Nucor then appears to argue that, even if *Holowecki* applies, Ms. Wilkes did not intend the questionnaire to constitute a charge because she checked the box indicating that she wanted to speak to an EEOC employee before deciding to file a charge and, by doing so, "failed to express an intent to file a charge on those allegations" in the questionnaire (Dkt. No. 15, at 5).  Nucor essentially argues that her conduct does not suffice to meet *Holowecki*'s request-to-act requirement.

This Court acknowledges that the EEOC enforcement mechanisms under Title VII and the ADEA differ in some respects and that it "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination."  *Holowecki*, 552 U.S. at 393.  As it pertains to the form and substance of a charge, however, the only significant difference between Title VII and the ADEA is that the ADEA lacks a verification requirement. *Compare*  42 U.S.C. § 2000e-5, *and* 29 C.F.R. §§ 1601.9, 1601.12, *with* 29 U.S.C. § 626, *and* 29 C.F.R. §§ 1626.6, 1626.8.  This Court is not aware of any decision in the Eighth Circuit that has considered whether *Holowecki*'s request-to-act requirement extends to Title VII and the ADA. A number of courts in other jurisdictions have applied this standard in Title VII and ADA cases.

*See Williams v. CSX Transp. Co.*, 643 F.3d 502, 508 n.2 (6th Cir. 2011) (collecting cases and applying *Holowecki* in Title VII context); *Price v. City of New York*, 797 F. Supp. 2d 219, 225-26 (E.D.N.Y. 2011) (same and applying in ADA and Title VII context).

The Court notes, however, that because "the immediate question before [the Court in *Holowecki* was] the *timeliness* of the suit," 552 U.S. at 394 (emphasis added), some courts have suggested that *Holowecki* does not apply for determining the substantive scope of a complaint. *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010); *Ahuja v. Detica Inc.*, 873 F. Supp. 2d 221, 230 (D.D.C. 2012); *Morrow v. Metro. Transit Auth.*, No. 08 CIV.6123 (DLC), 2009 WL 1286208, at *6 (S.D.N.Y. May 8, 2009).

Further, some courts have expressly held that a claim listed in an intake questionnaire is not exhausted where a subsequently filed, timely charge does not include that claim. *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010) (noting the differing purposes of an intake questionnaire and a formal charge and stating, "A plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself.  Not only would this be circumventing the role of the [EEOC], but it would be prejudicial to the employer."); *Green v. JP Morgan Chase Bank Nat. Ass'n*, 501 F. App'x 727, 731 (10th Cir. 2012) (stating its agreement with *Barzanty* that "it would defeat the statutory scheme to find exhaustion where an employee includes a claim in the intake questionnaire, but then omits it in a timely subsequent formal charge that forms the basis for the administrative proceedings"); *Halsey v. United Parcel Serv., Inc.*, No. 14-CV-02312-JAR-KMH, 2015 WL 73685, at *5 (D. Kan. Jan. 6, 2015) (following *Green*); *Williams v. Cnty. of Cook*, 969 F. Supp. 2d 1068, 1076 (N.D. Ill. 2013) (finding *Barzanty* and *Green* persuasive); *Ahuja*, 873 F. Supp. 2d at 228 (quoting with approval *Barzanty* and reaching a similar result).  Several of these decisions note that the plaintiff in

*Holowecki* did not file a formal charge until after she filed her complaint in district court, 552 U.S. at 406, and therefore reason that *Holowecki* did not address the situation where a claimant files an intake questionnaire *and* a timely charge, all before commencing suit.  *Green*, 501 F. App'x at 731; *Halsey*, 2015 WL 73685, at *5; *Williams*, 969 F. Supp. 2d at 1075; *see also Wojtanek v. Pactiv LLC*, 492 F. App'x 650, 653 (7th Cir. 2012) ("Although the Supreme Court [in *Holowecki*] has held that in some circumstances even an intake questionnaire can constitute a charge of discrimination, . . . the Court has not addressed the situation where the plaintiff has signed a formal charge of discrimination that narrows the allegations presented to agency official.")

This Court need not decide whether *Holowecki* applies here.  Even if the Court were willing on the facts of this case to apply *Holowecki* and engage in an analysis of the intake questionnaire, Ms. Wilkes's intake questionnaire does not satisfy the request-to-act requirement and cannot salvage her purported race discrimination and accommodation claims.  In *Holowecki*, the Court doubted the sufficiency of an intake questionnaire alone but nonetheless found the request-to-act requirement satisfied by virtue of an attached, detailed affidavit that specifically requested the agency to "[p]lease force Federal Express to end their age discrimination . . . ." 552 U.S. at 405.  In so holding, the Court noted that the design of the intake questionnaire in use in 2001 did "not give rise to the inference that the employee requests action against the employer" and urged the EEOC to "establish[ ] a clearer, more consistent process" to "reduce the risk of further misunderstandings."  *Id.* at 405, 407.  "Since that time the EEOC has changed the form to require a claimant to clearly express his or her intent by checking one of two boxes," *Lugo-Young v. Courier Network, Inc.*, No. 10-CV-3197 RRM LB, 2012 WL 847381, at *6 (E.D.N.Y. Mar. 13, 2012) (analyzing an intake questionnaire form similar to the one at issue

14

here), which "forces claimants to decide whether their questionnaire is a request for the agency to take remedial action, such that courts can objectively determine whether each questionnaire is a charge of discrimination or merely a request for further information," *Hawthorne v. Vatterott Educ. Ctrs., Inc.*, No. 09-CV-442-TCK-PJC, 2010 WL 3258560, at *4 (N.D. Okla. Aug. 17, 2010).

Here, Ms. Wilkes passed over the box stating she wanted to file a charge and instead checked the box stating: "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." (Dkt. No. 13-1). Accordingly, even if this Court were to engage in the *Holowecki* analysis, her intake questionnaire cannot "reasonably be construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee," *Holowecki*, 552 U.S. at 402. To the contrary, her intake questionnaire specifically evinced intent not to file a charge at that time. Other courts considering intake questionnaires that include these boxes have found the plaintiff's choice significant, if not determinative, on the *Holowecki* requirement. *See Lugo-Young*, 2010 WL 847381, at *6 (determining that, where plaintiff checked box indicating desire to talk to EEOC employee before deciding whether to file a charge, intake questionnaire would not be construed as an EEOC charge); *Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 92 (D.D.C. 2012) (reaching a different conclusion where plaintiff instead checked the box indicating plaintiff wanted to file a charge); *Crevier-Gerukos v. Eisai, Inc.*, No. CIV.A. H-11-0434, 2012 WL 681723, at *8 (S.D. Tex. Feb. 29, 2012) (same, collecting cases); *Hawthorne*, 2010 WL 3258560, at *4 (same). This Court determines that, even

if the Court were to engage in the *Holowecki* analysis,  Ms. Wilkes's intake questionnaire does

not satisfy the request-to-act requirement.

The Court acknowledges that other courts have reached a different result when analyzing

other form language from intake questionnaires.  *See Cross v. Foods, Inc.*, 881 F. Supp. 2d 1012,

1018 (S.D. Iowa 2012) (agreeing with other cases finding significant language in the intake

questionnaire stating that "[w]hen this form constitutes the only timely written statement of

allegations of employment discrimination, the Commission, will, consistent with 29 CFR

1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under

the relevant statute(s)").[2]  This Court finds more significant Ms. Wilkes's choice to check the

box stating that she wanted to talk to an EEOC employee before deciding whether to file a

charge and that she understood she had not filed a charge, especially in the light of the

instructions accompanying the two boxes on the intake questionnaire

Equitable considerations still may support Ms. Wilkes's attempts to rely on her intake

questionnaire to salvage her purported race discrimination and accommodation claims.  There is

authority from other jurisdictions that a court may look outside the EEOC charge where the

charge is deficient due to the fault of the EEOC.  For example, the Ninth Circuit has stated that,

"[i]f the charge itself is deficient in recording her theory of the case due to the negligence of an

agency representative who completes the charge form, then the plaintiff may present her pre-

complaint questionnaire as evidence that her claim for relief was properly exhausted."  *B.K.B. v.

Maui Police Dep't*, 276 F.3d 1091, 1102 (9th Cir. 2002), *as amended* (Feb. 20, 2002) (collecting

cases).  The Seventh Circuit has stated that "written '[a]llegations outside the body of the charge

---

[2]  The intake questionnaire at issue in *Cross* was a 2006 form that did not include the choice of boxes implemented after *Holowecki*.  *See Cross*, 881 F. Supp. 2d 1012, Case 4:10-cv-00424-JEG-RAW, Dkt. No. 21-3, at 5-8.

may be considered when it is clear that the charging party intended the agency to investigate the allegations,'" *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010), and more recently stated that "it is an open question in this circuit whether a pro se plaintiff is bound by a formal charge if critical information supplied to the agency was omitted," *Wojtanek v. Pactiv LLC*, 492 F. App'x 650, 653 (7th Cir. 2012) (noting in part the Ninth Circuit's criticism in *B.K.B.*, 726 F.3d at 1101-02, of a prior Seventh Circuit decision).  Although the law is somewhat unclear in the Seventh Circuit, district courts in the Seventh Circuit have considered evidence outside the charge when analyzing exhaustion issues.  *See, e.g.*, *Jordan v. Whelan Sec. of Illinois, Inc.*, 30 F. Supp. 3d 746, 751 (N.D. Ill. 2014) (noting different approaches taken by district courts in the Seventh Circuit and deciding to allow the plaintiff to present evidence outside her charge for exhaustion purposes).

This Court is not aware of any Eighth Circuit decisions that address this specific issue, although the Eighth Circuit has stated generally that "when an agency misleads a complainant as to certain specific pleading requirements, a claimant's failure to adhere to those requirements may be excusable, and thus, equitable tolling may apply."  *Schlueter v. Anheuser-Busch, Inc.*, 132 F.3d 455, 459 n.4 (8th Cir. 1998) (in a pre-*Edelman* analysis, permitting equitable tolling because the EEOC mistakenly gave the claimant an intake questionnaire rather than a charge form, used the wrong date to calculate when the 300-day filing period would expire, and led the claimant to believe that she had done everything necessary to file a charge); *Anderson v. Unisys Corp.*, 47 F.3d 302, 306-07 (8th Cir. 1995) (collecting cases and finding equitable tolling appropriate where state agency, acting as agent of the EEOC, sent a letter to a *pro se* plaintiff that mislead plaintiff to believe that filing deadline with the EEOC was one year, not 300 days).

Ms. Wilkes apparently seeks to invoke such equitable considerations, suggesting that she shared all her concerns during conversations with the EEOC investigation officer, addressed all of her issues "on the paperwork she filled out," but "did not type the final document and is unfamiliar with how the EEOC categorizes claims" (Dkt. No. 13, at 3).   The Court construes this as an argument that the EEOC failed to include in the Form 5 charge all of the allegations Ms. Wilkes intended to raise in her charge and did raise in her intake questionnaire.   Under the circumstances, at this stage of the litigation, the Court will consider Ms. Wilkes's intake questionnaire for purposes of resolving Nucor's pending motion to dismiss.   Nucor may renew its argument on this issue, if appropriate, after conducting discovery regarding Ms. Wilkes's communications with the EEOC and the EEOC's conduct in processing her intake questionnaire and Form 5 charge.

### 2.   The Scope Of Ms. Wilkes's EEOC Charge

Having determined that the Court will consider Ms. Wilkes's intake questionnaire along with her Form 5 charge at this stage of the litigation, the Court turns to Nucor's exhaustion arguments as to Ms. Wilkes's specific claims.

Nucor argues that Ms. Wilkes did not exhaust her administrative remedies as to any race discrimination claim because she did not check "race" or otherwise mention race in her Form 5 charge and the allegations in her Form 5 charge are stated only in relation to sex and disability discrimination.   As Ms. Wilkes argues, however, she did check "race" as a basis of discrimination when completing her intake questionnaire.   Nucor does not address the contents of Ms. Wilkes's intake questionnaire and instead relies on it arguments that the Court should not consider the intake questionnaire.   The Court determines that it will not dismiss based on the filings before it at this stage of the litigation Ms. Wilkes's race discrimination claims for failure

to exhaust her administrative remedies, and the Court denies Nucor's motion to dismiss as to these claims.

Next, Nucor moves to dismiss Ms. Wilkes's failure-to-accommodate claim. Nucor argues that the disability discrimination claim described in her Form 5 charge is specifically confined to the alleged failure to provide assistance with her application for third-party insurance benefits, a separate and distinct claim from her failure-to-accommodate claim. *See, e.g.*, *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014) (stating that an ADA failure-to-accommodate claim is a separate form of discrimination from a claim of disparate treatment and that the former requires discriminatory intent, while the latter does not).

Nucor contends that Ms. Wilkes's Form 5 charge focuses only on the equal access, gender discrimination claim and the disability claim based on the alleged failure to assist with applying for long-term disability insurance benefits. Ms. Wilkes alleges in the charge that she had to take off work for a disability, was told by her employer that her doctor had jeopardized her health, and was told by her employer that she needed to make up her mind. Further, in her intake questionnaire, Ms. Wilkes specifically checked the box indicating that she requested an accommodation. The Court concludes based on the filings before it at this stage of the litigation that it will not dismiss for failure to exhaust her administrative remedies Ms. Wilkes's failure-to-accommodate claim under the ADA, and the Court denies Nucor's motion to dismiss as to this claim.

Lastly, Nucor moves to dismiss Ms. Wilkes's wrongful termination claims because Ms. Wilkes did not raise termination in her Form 5 charge or the intake questionnaire, which both were submitted prior to her termination. Ms. Wilkes does not allege or argue that she filed a subsequent EEOC charge after her termination a week later on March 5, 2014.

In response, Ms. Wilkes seeks to invoke the continuing violation theory, stating that she referred in the EEOC paperwork to her discrimination as "ongoing" and arguing that her subsequent termination was a part of the alleged ongoing discrimination (Dkt. No. 13, at 4).  At one time, the Eighth Circuit, like other circuit courts, permitted a finding that a subsequent retaliation claim growing out of an EEOC discrimination complaint was sufficiently related to be within the scope of the lawsuit.  *See Wedow v. City of Kan. City*, 442 F.3d 661, 672 (8th Cir. 2006) (discussing *Wentz v. Md. Cas. Co.*, 869 F.2d 1153 (8th Cir. 1989)).  However, the Supreme Court has since explained that the continuing violation theory does not encompass discrete acts of discriminatory or retaliatory conduct.  *See Morgan*, 536 U.S. at 110-15 (Title VII context).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id.* at 113.  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  *Id.* at 114.  "Each discrete act is a different unlawful employment practice for which a separate charge is required."  *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012) (citing *Morgan*, 536 U.S. at 114); *see also Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 826 (8th Cir. 2009) (applying *Morgan* and stating that "[a] termination is a discrete act, not a continuing violation.").  Ms. Wilkes's arguments for the continuing violation theory are foreclosed by *Morgan*.

The Court notes that Ms. Wilkes states in her response to Nucor's motion that she informed the EEOC of the termination but was not directed to amend her charge (Dkt. No. 13, at 4).  As stated above, the requirement to file a timely charge of discrimination with the EEOC is

subject to equitable doctrines such as tolling or estoppel, *Morgan*, 536 U.S. at 113, and the Eighth Circuit has stated that a claimant's failure to adhere to certain pleading requirements maybe be excused where the EEOC or state agency has mislead the claimant about those requirements, *Schlueter*, 132 F.3d at 459 n.4.

Specific to the issue at hand, the Eighth Circuit has suggested that simply informing the EEOC or a state agency of a post-charge termination is not enough to warrant equitable relief for failing to amend or file a new charge following the termination. *See Boge v. Ringland-Johnson-Crowley Co.*, 976 F.2d 448, 451-52 (8th Cir. 1992). In *Boge*, the plaintiff had been laid off three times and failed to amend or file a new charge after his final termination. He sought equitable relief regarding his alleged failure to exhaust his administrative remedies as to his termination, arguing that he had repeatedly contacted the state agency about his layoffs, including the termination at issue, and had asked that information regarding that termination be placed in his file. *Id.* at 451. In denying equitable relief, the Eighth Circuit indicated its agreement with the district court's conclusion that these facts were insufficient to show that the state agency improperly refused or failed to amend the plaintiff's charge or even that the plaintiff reasonably attempted to amend his charge. *Id.* at 452. The Eighth Circuit also noted that the plaintiff never indicated to the agency that he suspected the termination at issue was discriminatory or that it was a permanent discharge. *Id.* Finally, the Eighth Circuit cited as a distinguishable case a Ninth Circuit decision finding that equitable considerations excused the lack of timely filing where the EEOC improperly refused to amend the plaintiff's charge. *Id.* (citing *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 388 (9th Cir. 1990)).

District courts in the Eighth Circuit interpreting *Boge* suggest there must be proof the plaintiff attempted to amend a charge and to pursue a claim that the agency refuses or fails to

accept as an amendment to the charge. *See McKenzie v. Lunds, Inc.*, 63 F. Supp. 2d 986, 997 (D. Minn. 1999) ("Equitable relief from the 'like or reasonably related' requirement is available where an employee who has filed a charge with the EEOC attempts to litigate a claim that is not part of the charge filed with the EEOC, but which the administrative body refused to accept as an amendment to the charge before it."); *Mummelthie v. City of Mason City*, 873 F. Supp. 1293, 1311 (N.D. Iowa 1995) (same), *aff'd*, 78 F.3d 589 (8th Cir. 1996); *Nuss v. Cent. Iowa Binding Corp.*, 284 F. Supp. 2d 1187, 1197-98 (S.D. Iowa 2003) ("[E]quitable relief is not warranted where there is insufficient proof that the plaintiff attempted to amend the complaint or that the ICRC improperly refused or failed to amend the complaint.").

Here, Ms. Wilkes states only that she informed the EEOC of the termination and was not directed to amend her charge. She does not argue or suggest that she attempted to amend her charge or that the EEOC failed or refused to amend her charge. She also does not state that she informed the EEOC she believed her termination was discriminatory. Without more, Ms. Wilkes has not alleged in her complaint or the accompanying filings a sufficient basis for equitable relief to excuse her failure to amend her charge after her termination. Accordingly, the Court finds that Ms. Wilkes has failed to exhaust her administrative remedies as to any claims based on her termination, and the Court dismisses with prejudice any Title VII and ADA claims based on her termination. However, Ms. Wilkes may request that the Court reconsider this ruling, if appropriate, if she has additional evidence pertaining to exhaustion of her claims regarding her termination.

B.      **Adverse Employment Actions**

Nucor moves to dismiss the remaining discrimination claims—the equal access to restrooms and failure-to-assist with long term disability claims—on the basis that Ms. Wilkes has not alleged that she suffered an adverse employment action.

To establish her *prima facie* case of sex discrimination under Title VII and disability discrimination under the ADA, Ms. Wilkes must establish for each claim that, among other things, she suffered an adverse employment action.  *See Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1038 (8th Cir. 2010) (listing elements of a *prima facie* case of Title VII sex discrimination); *Wenzel v. Mo.–Am. Water Co.,* 404 F.3d 1038, 1040 (8th Cir. 2005) (listing elements of a *prima facie* case of ADA disability discrimination).   A materially adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (Title VII context); *see Wenzel*, 404 F.3d at 1042 (applying same in ADA context).  "Changes in duties or working conditions that cause no materially significant disadvantage . . .  are insufficient to establish the adverse conduct required to make a *prima facie* case."  *Harlston*, 37 F.3d at 382.

As to Ms. Wilkes's sex discrimination claim relating to equal access to restroom facilities, Nucor argues that Ms. Wilkes's allegations establish nothing more than "inconvenience" that is insufficient to establish a materially adverse employment action as a matter of law.  As an initial matter, Nucor provides this Court with no legal authority specific to the issue of restroom access, let alone the notion that unequal or inadequate restroom facilities is a mere inconvenience as a matter of law.  In fact, in *Wedow*, the Eighth Circuit rejected the argument that women firefighters being denied adequate restroom and shower facilities was

"mere inconvenience" that could not establish an adverse employment action under the facts of that case.  442 F.3d at 671-72.

Further, Ms. Wilkes argues in response to Nucor's motion that the unequal access to restrooms:  (1) is a violation of the Occupational Safety and Health Administration regulations; (2) caused undue burden on her by requiring her to wear extra layers of clothing to compensate for accidents due to not having a restroom in her work area; (3) contributed to her not being able to return to her assigned work station which was a contributing factor in her decreased salary and loss of employment.  Nucor argues in its reply that Ms. Wilkes did not allege that the distance to the restrooms negatively impacted her work performance in any way.   The Court disagrees. Consistent with her arguments in her response, Ms. Wilkes's complaint fairly alleges a connection between the physical hardship of the distance required to walk to the restrooms, an impact on her work performance, taking leave a second time, and ultimately being fired, ostensibly based on her time off work (Dkt. No. 2, ¶¶ 16, 37, 44).

Accepting Ms. Wilkes's allegations in her complaint as true at this stage of the proceedings, the Court finds that she has sufficiently alleged that she suffered an adverse employment action.   The Court denies Nucor's motion to dismiss Ms. Wilkes's sex discrimination claim based on unequal access to restrooms.

Nucor also moves to dismiss Ms. Wilkes's discrimination claims based on the alleged failure to provide assistance with her application for long-term disability insurance benefits. Nucor argues that this alleged failure does not constitute any adverse employment action by Nucor because a third party, Liberty Mutual, made the ultimate decision to deny the disability benefits.   Nucor misses the point; Ms. Wilkes alleges that Nucor's own actions in failing to provide to her timely certain information or to render meaningful assistance Nucor provided to

other non-protected employees resulted in the denial of her disability insurance benefits. The Court accepts Ms. Wilkes's allegations in her complaint as true at this stage of the litigation, and Nucor cites no controlling precedent for the proposition that the third-party's involvement absolves Nucor of liability for Nucor's alleged conduct as a matter of law. The Court denies Nucor's motion to dismiss on this basis without prejudice to Nucor's ability to revisit this issue should it wish to present to the Court controlling precedent or more persuasive authority.

### C.    ERISA Preemption

Nucor moves to dismiss Ms. Wilkes's claims relating to her long-term disability insurance benefits on the alternative argument that ERISA preempts these claims. Although Nucor raises this argument specifically as to the ADA, the Court understands Ms. Wilkes's complaint to allege also Title VII claims based on the alleged failure to assist with her application for obtaining long-term disability insurance benefits (*See* Dkt. No. 2, ¶¶ 19, 26, 28).

Here, Nucor raises ERISA preemption as to other federal claims, not state law claims. ERISA preemption applies to state law regulation and causes of action—either through express preemption pursuant to ERISA §514, § 29 U.S.C. § 1144, or complete preemption by virtue of the comprehensive civil enforcement mechanisms of ERISA § 502, 29 U.S.C. § 1132. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Because Ms. Wilkes brings her claims under Title VII and the ADA, which are federal laws, ERISA preemption does not apply. *See, e.g., Torres-Negron v. Merck & Co., Inc.*, 488 F.3d 34, 44-45 (1st Cir. 2007) (reversing district court's dismissal on ERISA preemption grounds of plaintiff's Title VII retaliation claim based on her employer's failure to provide COBRA notice, stating, "Because Torres's retaliation claim is brought under Title VII, a federal law, her claim is not preempted by ERISA."); *see also* 29 U.S.C. § 1144(d) ("Nothing in this subchapter shall be construed to alter, amend, modify,

invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.").

Accordingly, the Court denies Nucor's motion to dismiss on the basis of ERISA preemption.

***

For the reasons stated above, the Court grants in part and denies in part Nucor's motion to dismiss (Dkt. No. 7).  The Court grants Nucor's motion and dismisses with prejudice any Title VII and ADA claims based on Ms. Wilkes's termination for failure to exhaust administrative remedies.  The Court denies Nucor's motion in all other respects.

SO ORDERED this the 29th day of September, 2015.

Kristine G. Baker
United States District Judge