# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

ETTER WILKES                                                      PLAINTIFF

v.                                    Case No. 3:14-cv-00224-KGB

NUCOR-YAMATO STEEL COMPANY                                        DEFENDANT

## OPINION AND ORDER

Before this Court is a motion for summary judgment filed by defendant Nucor-Yamato Steel Company ("Nucor") (Dkt. No. 27). Plaintiff Etter Wilkes has responded (Dkt. No. 36). Nucor filed a reply (Dkt. No. 41), to which Ms. Wilkes has responded (Dkt. No. 42). Also before the Court is Ms. Wilkes's motion for leave from the Court to file statement of undisputed facts (Dkt. No. 43). Nucor opposes Ms. Wilkes's motion for leave (Dkt. No. 44).

Nucor moves for summary judgment on Ms. Wilkes claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101. Nucor argues that Ms. Wilkes cannot prove that she suffered an adverse employment action under Title VII. Nucor maintains that Ms. Wilkes's ADA claim fails concerning the provision of information to a third-party disability insurance carrier because individuals outside of her protected class also had claims denied. In addition, Nucor maintains that the third-party's denial of disability insurance does not establish an adverse employment action by Nucor. Finally, Nucor argues that Ms. Wilkes's ADA claim concerning a failure to accommodate fails because Ms. Wilkes cannot prove that she is a qualified individual under the ADA or that Nucor failed to provide a reasonable accommodation.

Ms. Wilkes makes several arguments in response to Nucor's motion for summary judgment. First, Ms. Wilkes contends that Nucor's actions constitute an adverse employment

action under Title VII because she was required to walk a longer distance to the restroom than her male co-workers and continued to pursue the construction of a women's restroom closer to her work area throughout her employment. Next, Ms. Wilkes argues that her ADA claim concerning Nucor's provision of information to a third-party disability insurance carrier stands because she can show that she was advised by a Nucor employee that her application was the only claim known to be denied. Finally, Ms. Wilkes argues that Nucor failed to provide her reasonable accommodation even though she requested only additional short breaks while working.

For the following reasons, this Court denies Ms. Wilkes's motion for leave from the Court to file statement of undisputed facts (Dkt. No. 43) and grants the motion for summary judgment, entering judgment in favor of Nucor (Dkt. No. 27).

## I. Motion For Leave To File Statement Of Undisputed Facts

On January 26, 2017, Nucor filed its statement of facts (Dkt. No. 29), along with its motion for summary judgment and memorandum in support. These filings were made through the Court's ECF system. Nucor represents that its statement of facts was served on Ms. Wilkes that same day through the Court's ECF system (Dkt. No. 44, ¶ 2). Ms. Wilkes, in her motion for leave, represents that when she "downloaded the Motion brief and exhibits there were no undisputed facts that downloaded with this material." (Dkt. No. 43, ¶ 1).

As Nucor notes, the Local Rules of the United States District Court for the Eastern and Western District of Arkansas have long required the filing of a separate statement of facts with a summary judgment motion. This requirement is not new. Local Rule 56.1(b) of the United States District Court for the Eastern and Western District of Arkansas requires a non-moving party to supply the Court with a statement of material facts "as to which it contends a genuine issue exists to be tried." *See Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011). Federal

Rule of Civil Procedure 56(e) states that, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order."

The record evidence relied upon by Nucor in filing its motion for summary judgment was attached to its motion, not the statement of facts (Dkt. Nos. 27, 29). Further, the statement of facts Nucor filed was repeated in substantially the same form, complete with cites to record evidence, at the start of its memorandum in support of its motion (Dkt. No. 28, 1-7). In other words, when Ms. Wilkes downloaded the motion and memorandum, she had available the allegations of undisputed fact made by Nucor and the record evidence upon which Nucor relied in filing its motion. Ms. Wilkes attached to her response several exhibits of her own, supplying the record evidence upon which she relied for her response (Dkt. No. 36). The Court has carefully considered these submissions. As a result of the Court's consideration of this material, the Court determines that Ms. Wilkes need not file a response to the statement of facts submitted by Nucor and denies her motion to do so (Dkt. No. 43). The Court also will not deem admitted Nucor's statement of facts. For purposes of resolving Nucor's motion, the Court has considered a fact undisputed only if it is supported by all record evidence, that submitted by Nucor and Ms. Wilkes.

## II.     Factual Background

Unless otherwise noted by citation, the following facts are taken from Nucor's statement of undisputed facts in support of its motion for summary judgment (Dkt. No. 29) and Ms. Wilkes's exhibits to her response to Nucor's motion (Dkt. No. 36). Ms. Wilkes worked for Nucor

from December 2, 1997, through March 5, 2014 (Dkt. No. 29, ¶ 1). Ms. Wilkes worked both day and night shifts, with a shift consisting of twelve hours (Dkt. No. 27-1, Wilkes Dep., at 45). She worked as an Inspector until her termination on March 5, 2014 (Dkt. No. 2, ¶ 9).

### A. Restroom Access

While working in the Roll Mill Finishing Department, Ms. Wilkes had access to two women's restrooms, one in the Roll Mill administrative office and one in the locker room. A male restroom is located in the I-Bed area of the Roll Mill, which was Ms. Wilkes's work area (Dkt. No 27-5, Brassfield Aff., ¶¶ 3-4). According to Dennis Taylor, who supervised Ms. Wilkes, the closest restroom is in shipping "right outside of door two, which is a hundred foot further than the one at the repair bed." (Dkt. No. 36-2, Taylor Dep., at 22). That restroom can be locked by anyone from the inside, is used by the cleaning service ladies, was accessible to Ms. Wilkes without having to go outside, and was approximately 50 feet closer to Ms. Wilkes's work area than the Roll Mill office restroom (*Id*.).[1] According to Ms. Wilkes, the men's restroom was located 60 feet from her work area, and the nearest available women's restroom was approximately an additional 75 feet past the closest men's restroom (Dkt. No. 27-1, Wilkes Dep., at 84-85). For Ms. Wilkes to walk to the women's restroom in the Roll Mill office, she had to walk through a door and along a short pathway (Dkt. No 27-5, Brassfield Aff., ¶ 4). That restroom was approximately 150 feet from where the men's restrooms were in Ms. Wilkes's work area, a total walk of approximately 250 feet

---

[1] Ms. Wilkes, in her deposition, claims that a restroom in shipping was created when a sign was placed on the door indicating it was for women but that the sign was later removed (Dkt. No. 36-1, Wilkes Dep., at 77-78). Ms. Wilkes acknowledges that she also had available locker room restrooms, in addition to the Roll Mill office restroom (Dkt. No. 27-1, Wilkes Dep., at 67-69; Dkt. No. 36-1, Wilkes Dep., at 79). It is unclear from the record whether Ms. Wilkes and Mr. Taylor refer to the same or different restrooms. Regardless, Ms. Wilkes acknowledges that there were two restrooms within walking distance from her work area designated for female employees and available to her (Dkt. No. 27-1, Wilkes Dep., at 67-69).

from Ms. Wilkes's work area (Dkt. No. 36-2, Taylor Dep., at 15, 38-39). To access the Roll Mill office restroom, Ms. Wilkes had to walk outside and approximately 30 feet of her walk outside was not under cover (*Id.*, at 15). According to Aaron Brassfield, leadperson on Ms. Wilkes's crew, it took an average of 37.1 seconds to walk the additional distance to the Roll Mill office restroom from the men's facility, "walking at a reasonable, normal pace." (Dkt. No 27-5, Brassfield Aff., ¶ 6).

During the relevant period, Mr. Taylor was Ms. Wilkes's supervisor. She admits she had a "great" relationship with Mr. Taylor and could speak with him about different employment issues (Dkt. No. 27-1, Wilkes Dep., at 20-21). Ms. Wilkes admits that she was never formally written up for taking excessive breaks, and she was never told by Mr. Taylor or any of the Nucor leads that she could not take a break (Dkt. No. 27-1, Wilkes Dep., at 85). When she needed to take a break, she radioed for a utility man to relieve her. Male employees did the same when they took an extended break for the restroom, lunch, to go to the office, or to take care of business (Dkt. No. 36-2, Taylor Dep., at 15-16, 42-43). If Ms. Wilkes's relief did not arrive timely, she had instructions from her supervisor that she could push a button and shut down the inspection bed (*Id.* at 17-18). Mr. Taylor did not recall her ever being required to do that (*Id.* at 43). He testified that, if that did occur, the line would be restarted within a couple of minutes, and no production would be lost as a result, meaning that production bonuses would not be effected (*Id.* at 43). There is no record evidence that Ms. Wilkes was not paid a production bonus during her employment with Nucor resulting from this or any other circumstance (*Id.* at 27-29).

At an unknown date, no later than October 2008, Ms. Wilkes found a padlock on the door of the women's restroom in the Roll Mill office while working a night shift (Dkt. No. 29, ¶ 6). According to Johnny Michael Dugan, a Roll Mill Manager, Patrice Strickland, a clerk for Roll

Mill, placed the padlock on the door because the women's restroom was "greasy," "nasty," or "vandalized" (Dkt. No. 27-3, Dugan Dep., at 10). After Ms. Wilkes complained to Mr. Dugan about the restroom being locked, he ordered the lock removed, and the women's restroom remain unlocked (Dkt. No. 29, ¶ 8). The Court acknowledges that Ms. Wilkes and Mr. Dugan characterize their conversation that day differently (Dkt. No. 36-1, Wilkes Dep., at 75-76, 80; 36-3, Dugan Dep., at 9-11, 14-15). The parties agree that, after that date, the women's restroom in the Roll Mill office was never locked again (Dkt. No. 36-1, Wilkes Dep., at 82).

Except for the above incident, Ms. Wilkes had no other issues with locked restrooms during her employment at Nucor. She did not complain to Mr. Dugan about restroom access, distance, cleanliness or anything else after complaining about this one incident (Dkt. Nos. 36-1, Wilkes Dep., at 77-78; 36-3, Dugan Dep., at 32-34).

When she complained about the Roll Mill office restroom being locked, Ms. Wilkes brought up for the first time the issue of not having a women's restroom closer to her work area (Dkt. No. 29, ¶ 9). In response to her complaint, Nucor sought bids for building a women's restroom near Ms. Wilke's work area (Dkt. No. 29, ¶ 10). The new women's restroom would either be built adjacent to the men's facility or converted from a previous men's facility (*Id.*). According to Mr. Dugan's deposition, the quotes for building a women's restroom ranged from $50,000 to $80,000 (Dkt. No. 27-3, Dugan Dep., at 14).

The parties dispute how the issue of building a women's restroom was handled. Nucor maintains that it informed Ms. Wilkes about the restroom construction options, and Ms. Wilkes indicated that, as long as the Roll Mill office restroom remained unlocked, she preferred to use that facility as opposed to a restroom out in the Mill (Dkt. No. 28, at 13; Dkt. No. 36-3, Dugan Dep., at 12-13, 31-34). Nucor further maintains that it did not build a new women's restroom

because Ms. Wilkes stated that she was satisfied with the women's restroom in the Roll Mill office (*Id.*). Nucor contends that, based upon Ms. Wilkes's preference for the restroom in the office, a women's facility was not built, the Roll Mill office restroom was never locked again, and Ms. Wilkes never had an issue with restroom access again (Dkt. No. 29, ¶ 12).

However, Ms. Wilkes argues that Nucor never asked if she needed a new women's restroom built (Dkt. No. 39, at 7). Ms. Wilkes further argues that she was in favor of the construction of a women's restroom near her work area after she was locked out of the women's restroom (*Id.*). In her deposition, Ms. Wilkes asserts that she was "delighted" to use the women's restroom in the Roll Mill office but never said that she "didn't need" a restroom built in the Roll Mill (Dkt. No. 27-1, Wilkes Dep., at 84). Ms. Wilkes also admits in her deposition that she "was promised early on" that a women's restroom would be built closer to her work area (*Id.*, at 13).

### B. Ms. Wilkes's Leave For Illness

In November 2012, Ms. Wilkes became ill with bronchitis and had to take time off from work (Dkt. No. 29, ¶ 13). She applied for leave under the Family and Medical Leave Act ("FMLA") and paid sick leave, which was provided (*Id.* ¶ 14). While off work for bronchitis, Ms. Wilkes was diagnosed with other ailments relating to her hip, back, and knee, including morbid obesity, lumbar degenerative disc disease, and degenerative knee disease (*Id.* ¶¶ 15, 27). Pursuant to the new diagnoses, Ms. Wilkes's doctor extended her excuse for time off from work (*Id.* ¶ 15).

Ms. Wilkes was still unable to work at the end of her 13 weeks of paid sick leave (*Id.* ¶16). Subsequently, she applied for long-term disability ("LTD") insurance benefits on February 13, 2013, with Nucor's third-party disability insurance carrier, Liberty Mutual, so that she could receive some income while she remained off work (Dkt. No. 29, ¶16). Liberty Mutual provides LTD as an optional, third-party benefit that Nucor employees can sign up for at the beginning of

their employment and that is not administered by Nucor (*Id.* ¶ 17).  In her LTD claim submitted to Liberty Mutual, Ms. Wilkes contended that she was disabled due to cellulitis in her hip and leg and due to bronchitis (*Id.* ¶ 18).  Ms. Wilkes's LTD claim was denied by Liberty Mutual because she did not meet Liberty Mutual's definition of "disabled" based on their review of her medical records (*Id.* ¶ 20).

The parties dispute Ms. Wilkes's contention that Nucor discriminated against her based on her gender during the LTD application process (*Id.* ¶ 21).  She argues that Nucor did not provide assistance with her LTD claim because Nucor did not produce documents to Liberty Mutual in a timely manner and, in some cases, provided inaccurate information (Dkt. No. 29, ¶ 21).  Ms. Wilkes admits that Nucor corrected any issues with regard to the documents sent to Liberty Mutual (*Id.* ¶ 22).  Ms. Wilkes also admits that Liberty Mutual denied her LTD application because she did not meet the definition of "disabled," not because of the information that Nucor did or did not provide (*Id.* ¶ 20, 22).  Ms. Wilkes also contends that Nucor failed to assist her with her appeal of the denial of benefits, but she does acknowledge that Nucor's Controller assisted her with her appeal (*Id.*, ¶ 23).  In her deposition, Ms. Wilkes discusses a meeting she had with Keith Prevost where he assisted Ms. Wilkes with a letter for her appeal (Dkt. No. 27-1, Wilkes Dep., at 102-3).  According to Ms. Wilkes, Mr. Prevost was also creating a video to send to Liberty Mutual for her LTD appeal that would show the physical requirements of Ms. Wilkes position at Roll Mill (*Id.*).  However, Ms. Wilkes states that she never saw Mr. Prevost's video and was unclear if a video was ever sent to Liberty Mutual (*Id.*).  Liberty Mutual denied Ms. Wilkes's LTD appeal because she did not meet the definition of "disabled" required by Liberty Mutual (Dkt. No. 29, ¶ 24).

## C. Ms. Wilkes's Return To Work

In August 2013, after being off work for nine months, Ms. Wilkes was released by her doctor to return to work with restrictions on lifting heavy items and requiring "frequent rest periods" (Dkt. 29, ¶ 28; Dkt. No. 27-8, at 13). According to the Attending Physician's Statement in Ms. Wilkes's LTD claim, Ms. Wilkes had a physical impairment that was the highest class and described as "severe limitation of functional capacity, capable of minimum activity." (Dkt. No. 27-9, at 3). After reviewing her restrictions, Nucor determined that there was no position that she could perform with her restrictions and no reasonable accommodation that Nucor could provide that would allow Ms. Wilkes to return to work (Dk. No. 29, ¶ 29). Mr. Dugan reviewed Ms. Wilkes's restrictions and determined that requiring additional breaks would make the work area unsafe, without clarifying the number or duration of additional breaks (Dkt. No. 27-3, Dugan Dep., at 23-24). Mr. Dugan decided that, to accommodate Ms. Wilkes's additional breaks, other employees would be required to work extra hours to cover for Ms. Wilkes's breaks, which would be unsafe for the other employees (*Id.*). Mr. Dugan or the nurse at Nucor likely communicated the decision to Ms. Wilkes (Dkt. No. 36-3, Dugan Dep., 22-25). When she was asked about what "frequent breaks" meant, Ms. Wilkes described it as taking a break when she needed to rest (Dkt. No. 27-1, Wilkes Dep., at 130). When asked if she had been permitted to do that before she submitted the work restrictions and request, she testified that, prior to that request, she was not permitted to take a break whenever she needed; instead, she had been permitted to take only restroom breaks when she needed (*Id.*, at 130-31).

Ms. Wilkes continued her leave from Nucor and did not return until she was released by her doctor with no restrictions on October 24, 2013 (Dkt. No. 29, ¶ 30). At that time, Ms. Wilkes acknowledged that she would only be able to perform her typical duties "to a degree" and would

have to be cautious about physical work (Dkt. No. 27-1, Wilkes Dep., at 112-13; Dkt. No. 36-3, Dugan Dep., at 25-26).  When Ms. Wilkes returned to Nucor, she worked 3.5 shifts across nine days before leaving work for the last time on November 4, 2013, because of an injury she sustained at work (Dkt. No. 29, ¶ 31).

On her last day of work, Ms. Wilkes tripped over a mat in her work area in the middle of her shift, which resulted in serious pain (Dkt. No. 29, ¶ 32).  After she tripped over the mat, Ms. Wilkes was in so much pain that she was unable to walk the full distance to the women's restroom (Dkt. No. 27-1, Wilkes Dep., at 114-15).  Prior to her tripping incident, both that night and on her previous shifts, Ms. Wilkes was working without pain and had taken trips to the restroom without a problem (Dkt. No. 29, ¶ 33).  Subsequently, Ms. Wilkes left the Roll Mill to go home and take medication (Dkt. No. 27-1, Wilkes Dep., at 114-15).  After leaving the Roll Mill, Ms. Wilkes did not return (*Id.*).

After sustaining the injury at work, Ms. Wilkes went to see her doctor who advised her against returning to the same "line of work," and Ms. Wilkes agreed with the assessment (*Id.* at 121-22; Dkt. No. 29, ¶ 36).  Ms. Wilkes followed her doctor's recommendation by not returning to the Roll Mill, and she received another 13 weeks of paid sick leave by Nucor (Dkt. No. 27-1, Wilkes Dep., at 122; Dkt. No. 29, ¶ 35).

### D.    Application For Social Security Administration Disability Benefits

Ms. Wilkes applied for Social Security Administration ("SSA") disability benefits in June 2013, prior to her release (Dkt. No. 29, ¶ 38).  In her application, Ms. Wilkes claimed that, as of November 2012, she was unable to work because of her disability (Dkt. No. 27-12, at 1).  The SSA did not make a determination of Ms. Wilkes's claim until August 11, 2014, after she returned to her job at Nucor in October 2013 (*Id.* at 15).  Ms. Wilkes continued to submit information to the

SSA after June 2013 in support of her disability claim (*Id.* at 31-34). Ms. Wilkes did not return to Nucor after November 4, 2013, and she was administratively terminated on March 5, 2014 (Dkt. No. 29, ¶ 40). Ms. Wilkes did not request an accommodation or otherwise express any interest in returning to work prior to her separation (*Id.*). On August 11, 2014, the SSA granted Ms. Wilkes's disability claim and determined that her total disability began on January 28, 2014 (Dkt. No. 27-12, at 30).

The SSA denied Ms. Wilkes's claim for benefits beginning on her original date of November 25, 2012, because the SSA determined that she "had the capacity to perform sedentary work." (*Id.* at 24-27). The SSA concluded that, even though Ms. Wilkes's job skills were not transferable, the lack of transferable skills was not a material issue to the determination of her date of total disability (*Id.* at 28-29). Therefore, the SSA determined that, while Ms. Wilkes was unable to perform her job at Nucor as of November 2012, her total disability did not begin until January 28, 2014 (*Id.* at 30).

## III.     Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447

(8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

IV.     **Analysis**

Ms. Wilkes has alleged multiple claims of discrimination against Nucor. At the outset, the parties dispute whether Ms. Wilkes abandoned or continues to advance claims of discrimination based on race. Ms. Wilkes has alleged a violation of Title VII for discrimination based on gender. Ms. Wilkes has alleged a violation of the ADA based on Nucor's alleged failure to assist properly with her application for long-term disability benefits through Liberty Mutual. Finally, Ms. Wilkes has alleged a violation of the ADA based on alleged discrimination as a result of Nucor's failure to make a reasonable accommodation for her disability.

A.     **Discrimination Claims**

Ms. Wilkes can establish a *prima facie* claim of discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973). *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). "Thus,

'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence. A plaintiff with strong direct evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial." *Id.* However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

Ms. Wilkes argues that this is a "direct evidence" case. "To be entitled to direct evidence analysis, the plaintiff must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Rivers-Frison v. Se. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998) (internal quotation marks omitted). "[N]ot every prejudiced remark made at work supports an inference of illegal employment discrimination." *Id.* Rather, "[d]irect evidence of employment discrimination must have some connection to the employment relationship." *Id.* Direct evidence of discrimination is not established by mere "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Id.* (quoting *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991)) (internal quotation marks omitted).

Based on the record evidence before the Court, Ms. Wilkes comes forward with no direct evidence of discriminatory animus by a decision maker at Nucor. The Court concludes that, despite Ms. Wilkes's claim, this is not a direct evidence case. Therefore, the Court will apply the three-part, burden-shifting framework of *McDonnell Douglas,* 411 U.S. at 802–04.

Pursuant to the *McDonnell-Douglas* burden-shifting framework, Ms. Wilkes bears the initial burden of establishing a *prima facie* case. *Torgerson,* 643 F.3d at 1046. If she establishes a *prima facie* case, the burden then shifts to Nucor to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* Ms. Wilkes must then "produce evidence sufficient to create a genuine issue of material fact regarding whether [Nucor's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Id.* (quoting *Pope v. ESA Servs., Inc.,* 406 F.3d 1001, 1007 (8th Cir. 2005)). The burden to prove pretext "merges with the ultimate burden of persuading the court that [Ms. Wilkes was] the victim of intentional discrimination." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).

### 1. Race

Based on Ms. Wilkes's unequivocal response to Interrogatory No. 2 (Dkt. No. 41, at 2) and her deposition testimony (Dkt. No. 27-1, Wilkes Dep., at 15-19), the Court concludes that she abandoned her claims of race discrimination. Having made those representations throughout the course of discovery, the Court will not permit Ms. Wilkes now, after discovery has closed and a motion for summary judgment has been filed, to revive those claims. Her race discrimination claims are dismissed.

### 2. Equal Access Gender Discrimination Claim

Ms. Wilkes alleges gender discrimination based on an allegation of equal access. In support of this claim, she relies on her access to the restroom. To establish this claim, Ms. Wilkes must demonstrate that: (1) she is a member of a protected group; (2) was meeting the legitimate job expectations of the employer; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees outside the protected class. *Holland v. Sam's Club*, 487 F.3d 641, 644-45 (8th Cir. 2007). Nucor maintains that Ms. Wilkes cannot establish a *prima*

*facie* case of gender discrimination under the *McDonnell Douglas* framework because she suffered no adverse employment action.

Title VII makes it unlawful to discriminate on the basis of sex with regard to the "terms, conditions, or privileges of employment" and prohibits an employer from depriving "any individual of employment opportunities or otherwise adversely affect[ing] his status as an employee" on the basis of sex. 42 U.S.C. § 2000e–2(a)(2). The Eighth Circuit Court of Appeals defines an adverse employment action as "'a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects.'" *Warr v. Hagel*, 14 F.Supp.3d 1244, 1250 (E.D. Mo. 2014) (quoting *Jackman v. Fifth Judicial Dist. Dept. of Correctional Servs.*, 728 F.3d 800, 804 (8th Cir. 2013)). To be materially adverse, the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 1251 (quoting *Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006)). There must be a material change in employment status — a reduction in title, salary, or benefits. *Id.*

During the relevant period, Mr. Taylor was Ms. Wilkes's supervisor, and she claimed she had a great relationship with him and could speak to him about different employment issues (Dkt. No. 27-1, Wilkes Dep., at 20-21). Ms. Wilkes admits that she was never formally written up for taking excessive breaks and never told she could not take a break (*Id.* at 85). When she needed to take a break, she radioed for a utility man to relieve her. Male employees did the same when they took an extended break for the restroom, lunch, to go to the office, to take care of business (Dkt. No.36-2, Taylor Dep., at 15-16, 42-43). Based on the record evidence, the one male co-worker who expressed resentment regarding Ms. Wilkes's calling on the radio to be relieved by the utility man when she took her restroom breaks was admonished by his supervisor, Mr. Taylor (*Id.* at 17).

If Ms. Wilkes's relief did not arrive timely, she had instructions from her supervisor that she could push a button and shut down the inspection bed (*Id.*).  Mr. Taylor did not recall her ever being required to do that (*Id.* at 43).  He testified that, if that did occur, the line would be restarted within a couple of minutes, and no production would be lost as a result, meaning that production bonuses would not be effected (*Id.*).  There is no record evidence that Ms. Wilkes was not paid a production bonus during her employment with Nucor resulting from this or any other circumstance (Dkt. No. 36-2, Taylor Dep., at 27-29).

Ms. Wilkes also discussed a situation with a co-worker named Gary; Mr. Taylor testified this situation was promptly addressed (*Id.* at 22-25).  Likewise, Mr. Dugan testified that he promptly addressed an issue between Ms. Wilkes and a male co-worker, as well (*Id.* at 15-17).

Ms. Wilkes comes forward with no record evidence to establish that her access to the restroom resulted in a material change in employment status — a reduction in title, salary, or benefits.  The facts of this case are distinguishable from the facts in *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661 (8th Cir. 2006).  In *Wedow*, the court determined the "record amply demonstrate[d] that the terms and conditions of a female firefighter's employment [were] affected by a lack of adequate protective clothing and private, sanitary shower and restroom facilities, because these conditions jeopardize her ability to perform the core functions of her job in a safe and efficient manner."  *Id.* at 671-72.  This record does not include that same type of evidence.

Nucor also argues that it is entitled to summary judgment on this claim because Ms. Wilkes expressed a preference for the restroom in the Roll Mill office and that, as result, there can be no adverse employment action (Dkt. No. 28, at 12-13).  Ms. Wilkes concedes that she preferred the restroom in the Roll Mill office (Dkt. No. 27-1, Wilkes Dep., at 84).  The Court is willing to conclude based on the undisputed record evidence that Ms. Wilkes preferred the Roll Mill office

restroom from among the restrooms then available to her. However, the Court does not conclude on the record evidence that her claim is barred as a result of this preference.

The Court also finds that, aside from the one incident regarding the locked restroom that occurred sometime before 2008, there is no record evidence that during the remaining years of her employment Ms. Wilkes complained again about access to restrooms. On this record evidence, the Court determines that no reasonable fact finder could conclude that Ms. Wilkes suffered an adverse employment action as a result of her access to the restroom.

Even if Ms. Wilkes established a *prima facie* case of gender discrimination, the burden shifts to Nucor to produce evidence of a legitimate, nondiscriminatory reason for its conduct. *Tyler v. Univ. of Ark. Bd. of Tr.*, 628 F.3d 980, 990 (8th Cir. 2011). "This burden is not onerous." *Bone*, 686 F.3d at 954. Courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Id.* at 955 (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 854 (8th Cir. 2005)). Nucor need only proffer a good-faith reason for its action. *Id.* The relevant inquiry at this stage for the Court is not whether Nucor took the correct action, but whether it took an adverse employment action based on a discriminatory animus. *Id.* at 953-54. Nucor maintains that it did not build or convert a restroom, despite obtaining bids to do so, because Ms. Wilkes declined the offer for a new one, stating instead that she preferred to use the Roll Mill office restroom she had used for years (Dkt. No. 36-3, Dugan Dep., at 12-15).

The burden then shifts to Ms. Wilkes to prove pretext and that gender discrimination was the real reason for Nucor's conduct. Ms. Wilkes denies being asked by Mr. Dugan, Mr. Taylor, or anyone else whether the restroom needed to be built or converted in the Roll Mill (Dkt. No. 27-1, Wilkes Dep., at 85). However, it is undisputed that, aside from the one incident regarding the

locked restroom that occurred sometime before 2008, there is no record evidence that during the remaining years of her employment Ms. Wilkes complained again about access to restrooms.

Although Ms. Wilkes identifies certain instances when she claims co-workers' conduct was based on her gender, Nucor's witnesses have explained those instances, and Ms. Wilkes does not refute the explanations. *See, e.g., Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir. 1999) ("Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support . . . an inference [of discrimination]. For example, stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself will not suffice.") (internal quotation marks and citation omitted). There is insufficient evidence of discriminatory animus. After examining all record evidence carefully and drawing all reasonable inferences in favor of Ms. Wilkes, the Court determines that the evidence relied on by Ms. Wilkes, whether viewed individually or cumulatively, does not create a triable issue both that Nucor's articulated reason was false and that gender discrimination was the real reason for Nucor's conduct. *McNary v. Schreiber Foods, Inc*., 535 F.3d 765, 769 (8th Cir. 2008). Ms. Wilkes's gender discrimination claim based on access to the restroom, therefore, must be dismissed. *See, e.g., Haggenmiller v. ABM Parking Servs., Inc*., 837 F.3d 879, 886–87 (8th Cir. 2016) (even a weak issue of material fact is insufficient to defeat summary judgment in discrimination case).

### 3.      Claim Based On Assistance With LTD Application

Ms. Wilkes also alleges that Nucor discriminated against her on the basis of her disability and gender as a result of the assistance she received from Nucor with her LTD application. During her deposition, Ms. Wilkes clarified that she made this claim because she believed that she was the only Nucor employee who ever had an application for benefits denied and that she believed

her gender must have been the reason for the denial (Dkt. No. 27-1, Wilkes Dep., at 16-17). The Court will examine this as a claim based on both disability and gender.

Nucor contends that Ms. Wilkes's claim fails because she cannot establish that she was treated differently because of her disability or gender nor that she suffered an adverse employment action taken against her by Nucor (Dkt. No. 28, at 13-15). The Court agrees.

The record evidence is that Nucor employee Jackie Pearson, who works in payroll and human resources, sends to the employee if appropriate a packet with instructions regarding LTD benefits (Dkt. No. 36-4, Pearson Dep., at 5, 9-10). She provides to Liberty Mutual information regarding dates such as hire dates or sick leave dates, but the employee is required to provide to Liberty Mutual all other information and materials in support of the claim. Nucor, and specifically Ms. Pearson, does not receive correspondence regarding the claim unless the employee provides it and requests assistance (*Id.*, at 13). Ms. Pearson then receives a letter from Liberty Mutual stating whether the employee is approved or not for LTD benefits but not stating reasons why (*Id.*, at 20). She may learn the reasons why only if the employee informs her of that (*Id.*, at 19).

Ms. Wilkes bases her claim on her allegation that she received different assistance with regard to her LTD application as compared to comparators outside her protected class, but this is not supported by record evidence or Ms. Wilkes's own admissions. She does not allege or testify that she was treated differently because of disability or gender. Ms. Wilkes admitted during her deposition that, if the evidence showed that white males had their disability benefits denied also, she would change her mind about whether Nucor purportedly discriminated against her with respect to her LTD application (Dkt. No. 27-1, Wilkes Dep., at 16). The record evidence demonstrates that several white males had their LTD benefit claims denied by Liberty Mutual (Dkt. No. 36-4, Pearson Dep., at 43-45). Ms. Wilkes comes forward with no record evidence to

refute this. There is a lack of evidence of disparate treatment of individuals outside of Ms. Wilkes's protected class.

Further, this claim fails because Ms. Wilkes cannot establish that she suffered an adverse employment action as a result of Nucor's conduct. The ADA necessarily requires an employment action taken by the employer to establish a claim. 42 U.S.C. §§ 12111, 12112 (no covered entity employer shall discriminate against a qualified individual on the basis of a disability). Ms. Wilkes's claim relates to her allegation that Nucor's timing and accuracy of the information provided to Liberty Mutual regarding her LTD claim impacted the denial of that claim. That action, however, had no role in the decision to deny LTD benefits to Ms. Wilkes (Dkt. No. 36-4, Pearson Dep., at 26, 36-39). Further, Ms. Wilkes testified that any mistakes regarding the information sent to Liberty Mutual on her behalf were not only corrected but also had no bearing on the decisions Liberty Mutual made (Dkt No. 27-1, Wilkes Dep., at 100-01).

In addition, the denial of her LTD benefits is not attributable to Nucor. Ms. Wilkes admitted, and the undisputed record evidence shows, that Liberty Mutual made the denial decisions based on its own independent determination of whether Ms. Wilkes had a qualifying disability (Dkt No. 36-4, Pearson Dep., at 28). Liberty Mutual cited Ms. Wilkes's medical records in regard to this decision, and there is no record evidence that Nucor was involved in accessing, providing, or transmitting Ms. Wilkes's medical records. Liberty Mutual's decisions do not constitute adverse employment actions by Nucor. *Johnson v. U.S. Steel Corp.*, 943 F. Supp. 1108, 1116 (D. Minn. 1996) (determining that the discontinuation of benefits pursuant to a third-party administrative order was not an adverse employment action).

She has not demonstrated that other comparators outside her protected class were treated differently, and she has not demonstrated adverse employment action resulting from Nucor's

conduct.  For these reasons, this Court grants Nucor summary judgment on her discrimination claim based on assistance with her LTD application.

### B.       ADA Failure To Accommodate Claim

Ms. Wilkes also alleges a failure to accommodate claim under the ADA.  To establish a *prima facie* case of discrimination on the basis of a disability, generally, a plaintiff must show that she "(1) has a 'disability' within the meaning of the ADA, (2) is a 'qualified individual' under the ADA, and (3) 'suffered an adverse employment action as a result of the disability.'"  *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003) (quoting *Duty v. Norton–Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002)).  For an employee to be a qualified individual under the ADA, she must:  "(1) possess the requisite skill, education, experience, and training for h[er] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation."  *Id.* at 712 (quoting *Heaser v. Toro Co*., 247 F.3d 826, 830 (8th Cir. 2001)).

Under the ADA, an employer is required to provide reasonable accommodation to the known physical limitations of an otherwise qualified employee with a disability, unless doing so would impose an undue hardship on the employer.  42 U.S.C. § 12112(b)(5)(A); *see also Kowitz v. Trinity Health*, 839 F.3d 742, 745 (8th Cir. 2016).  "To determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.'"  *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906 (8th Cir. 2015) (quoting *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009)).  An employee alleging that his employer did not engage in this interactive process must show:  (1) the employer knew about his disability, (2) he requested accommodation, (3) the employer did not make a good-faith effort to assist him in seeking

accommodation, and (4) he could have been reasonably accommodated but for the employer's lack of good faith. *Peyton*, 561 F.3d at 902.

## 1.     Qualified Individual Under The ADA

Nucor essentially asserts that Ms. Wilkes was not a qualified individual under the ADA at the time she made a request for accommodation of her lifting restrictions and need for frequent breaks. The undisputed record evidence is that Ms. Wilkes filed for SSA benefits alleging that she was totally disabled, unable to perform any job, dating back to November 2012. She was ultimately awarded benefits based on her total disability, with an onset date of January 2014. The SSA also concluded that Ms. Wilkes could only perform sedentary work and not her job at Nucor, from November 2012 to January 2014. This included the time Ms. Wilkes claims she was entitled to an accommodation.

Nucor maintains that her contention that she could have worked from the time of her restricted release or any time thereafter, had Nucor provided her an accommodation, is inconsistent with her sworn statements to the SSA that she could not work in any capacity — statements that were ultimately accepted and formed the basis for her award of benefits. Nucor is correct in that Ms. Wilkes is not automatically barred from asserting contradictory claims here, but she must "proffer a sufficient explanation" for the "apparent contradiction" to survive summary judgment. *Cleveland v. Policy Mgmt. Sys. Corp.* 526 U.S. 795, 806 (1999); *Voeltz v. Arctic Cat, Inc.*, 406 F.3d 1047, 1050 (8th Cir. 2005); *Garner v. Tobacco Superstores, Inc.*, No. 2:05-cv-00254 JLH, 2008 WL 205582, at *3 (E.D. Ark. Jan. 23, 2008); *cf. Budd v. ADT Sec. Sys., Inc.*, 103 F.3d 699, 700 (8th Cir. 1996) (determining that a plaintiff who sought and received SSA benefits was estopped from claiming the ability to do the job with accommodation). Alternatively, Nucor seeks to limit her claim to August 20, 2013, to November 4, 2013, when she represented to SSA that she

could no longer work, with or without accommodation. In no event should her claim extend beyond the date that she was awarded SSA benefits based on total disability on January 28, 2014.

On the record before the Court, construing all evidence in Ms. Wilkes's favor, the Court determines that Ms. Wilkes has failed to meet her burden to explain the inconsistency between her prior allegation of total disability in her application for SSA benefits and her claim in this action that she is a qualified individual within the meaning of the ADA. She has not provided an explanation "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Cleveland*, 526 U.S. at 1604; *see also Lloyd v. Hardin County*, 207 F.3d 1080 (8th Cir. 2000).

## 2. Request For Accommodation

Nucor also contends that Ms. Wilkes's failure to accommodate claim fails because she cannot prove that there was a reasonable accommodation that Nucor failed to provide (Dkt. No. 28, at 15-16). Nucor maintains that it provided to Ms. Wilkes multiple and extended leaves of absence to accommodate her conditions and to allow her to recover to return to work. In August 2013, after being off work for nine months, Ms. Wilkes was released by her doctor to return to work with restrictions on lifting heavy items and requiring "frequent rest periods" (Dkt. 29, ¶ 28; Dkt. No. 27-8, at 13). After reviewing her restrictions, Nucor determined that there was no position that she could perform with her restrictions and no reasonable accommodation that Nucor could provide that would allow Ms. Wilkes to return to work (Dk. No. 29, ¶ 29).

As a result, Ms. Wilkes continued her leave from Nucor and did not return until she was released by her doctor with no restrictions on October 24, 2013 (Dkt. No. 29, ¶ 30). At that time, Ms. Wilkes acknowledged that she would only be able to perform her typical duties "to a degree"

and would have to be cautious about physical work (Dkt. No. 27-1, Wilkes Dep., at 112-13). When Ms. Wilkes returned to Nucor, she worked 3.5 shifts across nine days before leaving work for the last time on November 4, 2013, because of an injury she sustained at work (Dkt. No. 29, ¶ 31). It is undisputed that Ms. Wilkes did not attempt to return to work after November 4, 2013.

Nucor maintains that, in August 2013, when Ms. Wilkes attempted to return to work with her restrictions, Nucor determined that her requested restrictions were not reasonably accommodated and, instead, accommodated her by allowing her to continue to recover on leave until she was ready to return to work with no restrictions. A "leave of absence might, in some circumstances, be a reasonable accommodation." *Brannon v. Luco Mop Co.,* 521 F.3d 843, 849 (8th Cir. 2008). Ms. Wilkes offers no record evidence to dispute this nor does Ms. Wilkes come forward with record evidence to establish what other accommodation she contends would have been possible for Nucor to provide under the circumstances. For these reasons, Ms. Wilkes fails to establish a *prima facie* case based on the record evidence, construing all inferences in favor of Ms. Wilkes.

### 3. Legitimate, Nondiscriminatory Reason And Pretext

Even if Ms. Wilkes could establish a *prima facie* case, Nucor has proffered a legitimate, nondiscriminatory reason for not accommodating Ms. Wilkes's request to return to work with her lifting restrictions and need for frequent breaks. Mr. Dugan reviewed Ms. Wilkes's restrictions and determined that requiring additional breaks would make the work area unsafe, without clarifying the number or duration of additional breaks (Dkt. No. 27-3, Dugan Dep., at 23-24). Mr. Dugan decided that to accommodate Ms. Wilkes's additional breaks, other employees would be required to work extra hours to cover for Ms. Wilkes's breaks, which would be unsafe for the other employees (*Id.*).

Accordingly, the Court may proceeds to the question of pretext. On the record evidence, with all reasonable inferences construed in favor of Ms. Wilkes, she fails to prove pretext in regard to her ADA failure to accommodate claim. She fails to prove that Nucor's proffered reason for not accommodating her request to return to work with her lifting restrictions and need for frequent breaks was pretext and that disability discrimination was the true reason. The Court grants summary judgment to Nucor on Ms. Wilkes's failure to accommodate claim.

V.      Conclusion

For the foregoing reasons, the Court denies Ms. Wilkes's motion for leave from the Court to file statement of undisputed facts (Dkt. No. 43) and grants the motion for summary judgment, entering judgment in favor of Nucor (Dkt. No. 27). Judgment will be entered by separate Order.

So ordered this the 29th day of September, 2017.

Kristine G. Baker
United States District Judge